Good morning, your honors. May it please the court, I'm Larry Zerner, attorney for defendant Mark Towle. Imagine that DC comes out with a new comic book in which famous artworks come to life. So you have Michelangelo's David and the Statue of Liberty and the Mona Lisa. And they all have superpowers and they're all fighting crime. And then my client sells copies of the Statue of Liberty and DC sues and says, that's my character. We would know immediately that they wouldn't have a case because the Statue of Liberty is not protected by copyright. And that is the exact situation we have here. Even though they have a Batmobile, even though they claim it's a character, the protection of that character does not go to the design of the cars themselves. They're excluded from copyright protection at the outset, just as the Statue of Liberty is excluded from copyright protection. So my client is free to make copies of these cars and sell cars based on these public domain designs. In a case decided last year, Inhale v. Starbust Tobacco, this court said it would defer to the Copyright Office's interpretations of the Copyright Act. And the Copyright Office says, if you draw a car, you can copyright that drawing, but that does not give the artist the exclusive right to make automobiles of the same design. Well, that's what DC's argument is. We drew a car, now we have the exclusive right to make that car for 95 years. Congress said, you have 14 years. They had 14 years. The 14 years expired. Now anyone can make cars based on that design. My client is not selling a character. He does not put these cars in comic books, in movies, or in TV shows. They are functional vehicles. That's all they do. You get in them and they drive. DC then says, well, there are parts of the car that are separable. Well, in the decision, the lower court said that the fins and the grills and the fenders could all be considered separable, which is contrary to the law itself, because Section 101 of the Copyright Act says that anything that is normally found on a useful item is a useful item. So fins and grills and fenders, by definition, can never be considered conceptually separable. What if Sotheby Properties decided to copy cars that were adopted by Remax? So Remax had very distinctive looking Volkswagens that had Remax symbols on them to advertise their real estate company. Could Sotheby Properties simply copy that and start driving these cars around? Nope, no problem with that. That would be a trademark issue, not a copyright issue. And that's the thing. From day one... Well, they might have an action in trademark. Do they have an action in copyright? Well, we'd have to see what the design is, but probably not. I mean, nothing on this car would qualify under that. You could have a paint job on a car that could be copyrightable, but the paint job on these cars, they're black. I mean, so there's nothing here where... So nothing in terms of the black symbols on the hubcaps and the black symbols on the side? Well, again, from the beginning, we told DC we would stop putting the symbol on the car. We'll sell the car without the symbols. They claim they own the entire thing. We've said he will not put the symbol on the car anymore. We want to sell the car without the symbol. Did you have the symbols on before? The symbols were on the car, yes. Do you agree that that's copyrightable? I don't know that the outline of an animal would be considered copyrightable, but even if it is, the copyright that would cover the Batman emblem... The Batman emblem first appeared in Batman number 167. That's on page 344 of the record. They didn't sue on Batman number 167. That copyright is not in the record. So we don't know whether they own that copyright, because they never put that copyright in the record. The copyright that would cover the bat symbol is not in the record. So maybe they do own it, but they didn't prove it. One of the arguments that DC makes is that they own the merchandising rights to the characters in the movies, the Batmobile and the two movies, and that this would be infringing on that component of their copyright. Assuming that they did reserve the merchandising rights, I guess the argument is that the cars that your client were making were fairly closely similar to the characters in the movies. So would that be a copyright violation? Why is that not, assuming that DC retained the merchandising rights? Because you have to make a determination at the outset as to whether that which they're claiming protection of is copyrightable. So you can have, let's say for example, someone has the merchandising right to Indiana Jones movies, and they sell Indiana Jones whips. Now my client sells whips. They can say, you're violating our copyright. No, there's no copyright to the whip. There's no copyright to the car. So in the Heliki we suggested that the mere fact that the character was a car, a yellow car with a name, Eleanor, did not per se say it couldn't be also a copyright infringement if somebody goes out and makes those cars. So you're not arguing that it's per se not copyrightable, are you? The character could be copyrightable, but the copyright does not go to the design of the car, just like it wouldn't go to the Statue of Liberty. Walt Disney has a movie, Herbie the Love Bug, if you remember it. But your client's calling the car a Batmobile, right? He calls it a replica of the Batmobile, and we said he will not do that anymore. He will not do that anymore. What we want is this injunction that says he cannot sell Batmobiles, which means they have more than 100 different models of cars that they call the Batmobile, from a 1942 Packard to a 1967 Corvette to a 1955 Lincoln Futura, which is what the 66 Batmobile is. It's a 1955 Lincoln Futura. So when the injunction says you can't sell Batmobiles, we're saying, no, no, we won't call it a Batmobile, but you can't say we can't sell the car as a car. So you could sell a black car without the fins and the bat scopes and whatever the other bat gadgetry is, right? But that wouldn't really serve your client's interest. Well, the fins are not protected by copyright, and the record shows that the other gadgets are not owned. They're owned by Fox. They don't own them. They didn't put that in the record. They have a contract with ABC. There's a contract between DC and ABC. There's no contract between. The contract with Fox and DC says that Fox owns the design rights to its car, subject to any rights that they had in the listed features. But when we took the deposition of DC and said, what rights do you have in these features? Where are they in the comic books? They couldn't point to any other than the emblem. None of these things, the bing-bong, warning bell, the bat ray, the bat scope, none of those things appeared in any of the comic books. So they never acquired these rights from Fox. Fox didn't sue my client. DC did. DC didn't prove that they own any of these copyrights. Well, let's assume for a minute they do, and you seem to be acknowledging you can't use the symbols on the car, but your argument is you can take a replica with the fins and the other general design of the car, black. So let's give you that for a second. Okay. What about the gadgets? Let's assume that they do own it. Okay. Can you put the Batmobile gadgets, are they subject to copyright? Well, we'd have to go to whether they're conceptually separable or not and whether they're protected by copyright. One of the gadgets is a fire extinguisher, which from the record we know that George Barris bought a fire extinguisher at the hardware store and stuck it in the car. DC doesn't own a copyright to the fire extinguisher just because they stuck it in a car. There's a thing, a bat ray, there is a button and there are words bat ray on the car. There is no bat ray on the car. There's a button and the words bat ray. Do they own the words bat ray? I don't think the words bat ray are covered by copyright. But, you know, so those are, they have, there's a radar screen on the car. DC doesn't own the copyright to that radar screen. George Barris put it in the car. The contract says he owns the copyright to that radar screen. So that would be our analysis of that issue. Also, there's nothing in the record about what the character elements of the, they say, the comic book had that it was, Judge Lu said it was swift and cunning and strong and elusive. There's nothing in the record as to what the, that the Batmobile in the TV show and the movie is a character at all. Because the only thing in the record are about ten pictures of each car. They didn't put the TV show or the movie into the record. We've never seen the movie. We're all just remembering from our childhood what it was. But we actually, they didn't put it in the record. All we have are these photos of the car. How can you make a determination that the 66 Batmobile is elusive or cunning? There's nothing there to make that determination. In terms of the trademark, there was clearly latches. They waited eight, they knew about it for at least eight years before they filed. And they never even sent a cease and desist letter to him. And then they said, well, he's acting in bad faith. He's got unclean hands. Every single person who bought a car from Mr. Toll in the period that they could sue on filed a declaration, signed a declaration saying that they knew this was not associated with D.C. My client did everything he could to make sure the people who bought from him knew he had no license from D.C. They were not selling a branded car. He was doing, so the standard to get around latches is fraudulent intent. Not just willfulness, but fraudulent intent. The record is clear. My client had no fraudulent intent. When was the last time you had a trademark case where the people who bought the car gave declarations for the defendant saying they weren't fooled. This is not a case where he's trying to pass off his cars as anything other than they were. Could I ask you just about the latches defense to the copyright claim? I understand you waived that. I just want to confirm that by stipulating to the entry of judgment against you in the district court. Because the district court left that issue open, and so by stipulating to judgment, I'm assuming you waived that claim. Is that right? No. We agreed to have a judgment entered to avoid the trial so we can come here to have this decided on appeal. But the district court left that open so that if it's not a complete judgment, then we can't really hear the case because there's still something pending. No, the judge left open the issue of latches on the copyright claim. Right, right. But subsequently, the Petrella case took that away. So that's not an issue.  So that's the only latches issue before us is on the trademark. Is that correct? Correct. Okay, I just wanted to confirm that. And then I'd like to talk about the issue of what copyrights are at issue in this case because they originally sued on 22 copyrights. There are 22 copyrights listed in the complaint. And I went to their attorney and I said, I looked at those copyrights and I said, this doesn't tell me anything about what you're claiming because none of these copyrights are being infringed. There were lists of random copyrights they owned. And I said, you need to amend. And you need to add Fox and Warner Brothers to this case. And they said, no, we don't. The copyright to the Batmobile precedes the TV show and movie copyrights. And then they amended the complaint and they added another 13 copyrights. So there are 35 copyrights listed in the complaint. Again, then I made a motion to dismiss and I said, you don't have Fox and Warner Brothers in this case. And in their opposition to that motion, they didn't say, no, no, we're suing on the Fox and Warner Brothers copyrights too. That's not what they said. They said, our creation of the Batmobile precedes that. Okay, so they were very clear they were not suing on the Fox and Warner Brothers copyrights at that point. In their Rule 26 disclosures, they didn't turn over any of the copyrights for the movie or the TV show. In the discovery, they didn't identify them. I took the deposition of their person most knowledgeable and I said, what copyrights are you suing on? Because at this point, I still didn't have an answer from him as to what copyrights they were actually suing on. And he said, I believe the copyrights we're suing on are mentioned in the, are listed in the pleadings. This is their person most knowledgeable. And then Mr. Coombs said, he said, I believe everything we are making a claim for is set, no, I'm sorry. Mr. Coombs said, the ones we're relying on, the copyright registrations that we're relying on for purposes of trial have been produced. This is on the day of the deposition. This time they had not given me any of the copyright registrations for the TV show. I have as clean a record as I can get. They are not suing on the Warner Brothers copyright or the Fox copyrights. They're only suing on the DC copyrights. Then after I got their person most knowledgeable to admit that nothing, nothing in the, in the cars that my client sold was in the comic books other than the bad emblem, which I discussed. Other than that, nothing. With four weeks to go before the summary judgment motions, they said, oh, here, we are suing on these copyrights. Here they are. They didn't amend the complaint. So all I'm asking for is that the rule is that when you file a copyright claim, you identify which copyrights you're suing on at the outset, because the defendant needs to know that. You need to know immediately. So what are you asking us to do? I'm asking that, that you hold them, this, look, I want you to rule on the merits, but I want you to, but even if you weren't, the, the, the, they didn't sue, they only sued on 35 copyrights. Those, they admit were not infringed. The 35 listed in the complaint, they admit, my client did not infringe them. He proved he did not infringe any of the copyrights that are listed in the complaint. Therefore, he wins on summary judgment. And that was one of our arguments in the summary judgment motion. And when, and was it in resistance to the summary judgment that they came up with the, the new copyrights? No, they gave it, but they gave it to me about four weeks before the summary judgments were going to be filed. After, I mean, I think discovery had cut off or two weeks before the discovery cut off. I mean, there was no, there was no, so I never did any discovery to Fox. I never sent any discovery to Warner Brothers because they made it clear to me they weren't suing on those copyrights. But after I proved that none of the comic book copyrights were being infringed, then they threw that in. I'm sorry, go ahead. I, I, I, I think I would be loath anyway, just to tell a trial judge how to run their case. And if, as long as it was before the cutoff and discovery and if the trial judge thought that was okay. And I don't know why we would, we would second guess the trial judge on that. Because the complaint, the rules of pleading itself say you must identify which copyright issues are, which copyright are at issue. There are cases, I mean, they're cited in the brief, that they say that you have to identify, so they identified, identified copyrights in the complaint. I'm still trying to figure out what it is that you want us to do. I want you to, to say that. You want us to dismiss the complaint? No. I want you to say, we went on our summary judgment motion, we proved that none of the copyrights listed in the complaint were infringed. They didn't, they didn't allege infringement. If you're saying, because certainly the cars my client sells, sold, do not look like the copyright, the comic book's copyright, the cars. They only look like the cars in the movie and the TV show. Did you set this out as a separate issue? Yes, yes. It's discussed in the brief. So, we shouldn't have this moving target litigation, where they own tens of thousands of copyrights, and then, so they just keep moving, right? Okay, you're not infringing this? Okay, we'll throw some other. We've had over a hundred copyrights that they've mentioned at one time or another that certainly was not the movie or TV show copyright. So, if you don't find, if you find that the cars do not copy from the TV show or movie, or do not copy from the comic books, they lose. I'd like to preserve the rest of my time. Okay, you may do so. Mr. Weinberger. Good morning, and may it please the court. I'd like to start off by making sure we all understand about what's not at issue in this case. Mr. Towle has stipulated to injunctive relief if liability is affirmed. He has effectively conceded liability on the trademark and unfair competition claims in the case, subject to the latches defense, which is an issue. He has conceded copying of the 66 and 89 Batmobiles. He's conceded that he has made replicas. And he's also conceded ownership of whatever rights DC has in its underlying literary comic book works. So, the only real issues that we've got left in front of us here are, one, whether DC has basis to bring a claim based on the rights that exist in the 1966 and 89 Batmobiles. On the copyright issue, if you find that DC does have a right to bring a claim, the case is over because effectively we've got a concession of copyright infringement. And we believe that it's not a close call as to whether DC does have those rights. In the underlying license that National, which is DC's predecessor, gave to ABC to create the Adam West television show, there was an explicit reservation of rights as to merchandising for anything that appeared in the show. And I know that Mr. Zerner has made multiple points, both in his brief and at the argument this morning, that, well, we don't know if DC was bound by the Barris Agreement and we don't have the Fox Agreement. I mean, we have to step back for a minute. This was a licensed television program based on my client's literary property. Mr. Barris was not out designing Batmobiles in his free time. He was commissioned by the producer, Fox and Greenway, who was retained by ABC pursuant to the National license in the first place to do it. So it's not as if we have Mr. Barris bringing a car to my client saying, hey, I've made a great Batmobile, do you want to buy it? This is all part of an overall transaction. As to the merchandising right, which is explicitly reserved in the Barris Batmobile, the 66 Batmobile, it's at pages 582, 594, and 595 of the record. And with respect to the first Batmobile for the 89 film, 623, 624, and 633, that's all you need. Because under the Copyright Act, in which the bundle of rights that you're given as an exclusive owner are divisible, you only need one exclusive right in order to bring a claim in federal court. That's the Ninth Circuit's Vettner-Vestron case that holds that. Moreover, Mr. Zerner is confusing the issue with respect to registration and identification of copyrights. Copyrights are not like patents, where you must have a patent that's infringed in order to have a successful claim. A copyright registration is a prerequisite to get into court. DC has a number of copyright registrations in its literary works, and the 66 television series and the 89 film are the subject of copyright registrations. That's not in dispute, and Mr. Tell got judicial notice of that at the pleading stage with respect to those registrations. All that's required is that it's registered. My client doesn't need to be the owner of the registration or the protective copyright that exists in the program or the film. We only need to be the owner of the exclusive right, of any exclusive right, and in this case it's merchandising, which is what Mr. Tell is doing, and so we're in court, and that's it, and you don't have to find anything else. May I just ask, Posting Council, at least in their briefs, makes the argument that the Batmobiles in the film and the TV show is a car, which is a useful article, and that the items that his client created are useful articles that therefore are not protected. Could you respond to that? Yeah, they're not useful articles. They're fictional superhero vehicles, and what Mr. Tell has done, Mr. Zerner has done in the briefing, is really kind of work backwards. They have pointed to the replicas, which are the infringing vehicles, and said, oh, well, this piece of the replica works, and so you can't find that to be the basis of copyright, but that's not the way it's supposed to work in the Norris case, which is their chief case. It's an 11th Circuit case, but I think it fits these facts, where the court found the spokes of a tire wheel to be not separable from the car. The court makes clear that you look at the plaintiff's work, not the infringing work, to determine whether or not the product or the article is useful or is separable, and here there's no dispute that the Barris car, the first car, the comic book cars, were not created to function as cars. The jet exhaust pipes don't actually emit jet exhaust. They are fictional props. They were intended, in fact, to track the language of Section 101 of the Copyright Act's definition of useful article. They're intended to portray the appearance of a car, but they are not actual. They are physical cars, but the elements that my client is seeking to protect are fictional. They're made up. So the fact that Mr. Towle's replica, that the bat scope also functions as a rear-view camera, we're not trying to prevent anyone from having a rear-view camera or a car phone, but a car phone shaped like a bat that calls Commissioner Gordon is the subject of my client's copyright, and that's really where we draw the line. I think nothing about my client's cars, whether you look at the comics or the 89 or 66 cars, are real. They're fictional. They just happen to be built-in models so that they could be put in a television show or a film. That's how we respond to that. It seems to me that the argument on the decals and some of the bat gadgets, as we've referred to them, is stronger than the argument about the shape itself. How is the shape of the car copyrightable? To be clear, to the extent it wasn't clear in our brief, we do not argue that cars are per se copyrightable. That's not the issue in this case. The Barris Batmobile was built on top of a Lincoln. The first Batmobile, I think it was built on top of a Chevy Caprice. I know it's in the record. What we are arguing is that the elements that were conceptually and physically separable from the car were added on top to those preexisting cars to create the fictional Batmobile. That's really what we're talking about. Are fins copyrightable? It depends. The underlying Barris car had fins. The fins that were used to create the Batmobile were not the underlying fins. They were placed on top. In fact, to deal with the issue of separability that this court requires in the recent Inhale v. Starpless case, he sold them in kits. You literally could go into his shop or order an attachment, a set of attachments, literally physical fictional parts to put on top of your car to make your own Batmobile. And so there's no question that when the original 66 and 89 Batmobiles were created, whatever elements were added onto them were not to make the car aerodynamic. They were to create the appearance of a fictional vehicle. They were completely superfluous to the functioning of a car. So while in the abstract a fin may make a car more aerodynamic, these fins certainly did not make a car more aerodynamic. They were created to create the appearance of a fictional vehicle that was driven by Batman. I guess I'm having trouble drawing the line between just because it's a fictional car. Back in the 50s when, I don't know who, Lincoln, let's say, was the first one to put fins on the cars, and then it became kind of like a Cold War of who could put bigger fins on cars. They weren't done for function. They weren't done for anything other than appearance. So how does that make those fins not copyrightable, but your fins, which are also done for appearance, copyrightable? Because the fins on the Cadillac or the Lincoln, whatever they were, were part of the useful article, and the fins on our car are not part of the useful article. They're intended to portray the appearance of a fictional vehicle, which is where the statute draws the line between what's a useful article and what's a sculptural work, so long as it's separable. That's the difference. I've been trying to think of hypothetical examples that would help illustrate these issues. James Bond's Aston Martin. Could I go out and sell Aston Martins that I bought on the secondary market and say, here's James Bond's car. If I'm simply selling an Aston Martin, I think the answer is yes. Maybe there's a trademark issue. I don't know. Now, what happens if you modify the car to create the ejector seat? You modify the car to pull up the bulletproof shield that comes out of the back, or the oil slick, or the piece that comes out of the tires to deflate the wheels across the way. That's a much tougher call because none of those elements, while they portray useful articles in a film, they're not real and they don't actually function that way. So that would be a tougher case. But this is not that case because we're not arguing that an unmodified car is subject to copyright protection. We're arguing that a car that has fantastical elements, which are literally attached separately on top of a real car, is subject to copyright protection. If Mr. Tao wants to go and sell Lincoln Futuras, he's welcome to it. He cannot add on fins and the other sculptural superfluous elements and call them Batmobiles. And, by the way, I think that's it on the copyright claim. Meaning, once we've accepted that the Bat elements that are added to these cars are separable, and that they're artistic, that's the end of the discussion because all that we need is an exclusive merchandising right, and that the book is protectable, and we're done. He's admitted to copying. So you don't even need to reach this character issue, which I think may be a tougher point to get your head around, although I don't think it's that much harder either, and I'd like to move to that. I think, in reading the cases, the copyright case law that deals with characters, characters are not protected under the statute. Case law has evolved to help copyright owners, owners of works of literary art and visual works, to protect against infringements where the infringer is not taking the book or the story, but some key artistic element of the book or the story. That's why the law was developed this way, to allow someone who maybe didn't want to take Rocky I and remake it, but wanted to put Rocky in a movie. And, for the most part, what's desirable, what's interesting to people about the artistic works is the people. But nothing in the precedent, and certainly nothing in the statute, would prevent a court from looking and saying, well, this desirable fictional element happens to be an inanimate object. It just is. And the character terminology, I think, is misleading, because it suggests that the thing may have to talk, or it may have to walk in order for it to be a quote-unquote character. But, in our view, character really is another way of saying a protectable story element. And that's what this is in the comics. So, if you look at the cases that have afforded separate protection for characters or story elements, independent of the works themselves, with respect to the comic books, they require a few things. They require that it's especially distinctive, and I think there's no real dispute here that the Batmobile is a famous conveyance that's attached to Batman. They require consistent and widely identifiable traits. And this is where we don't think there's a tough call with respect to the cars that appeared in the comics. They don't all look the same. We can see that. But just as the James Bond character portrayed by Roger Moore is extraordinarily different from the James Bond character portrayed by Sean Connery or by Daniel Craig, it's still James Bond. So, with respect to the comic cars, even though they look different, they all share the same primary visual characteristics. They have a dark color, for the most part. They have a sleek profile. They have a bat-themed front end and exaggerated fenders. They have a jet afterburner. They have a bat-thin motif. They have curved windshields. They have switches, lights, dials for gadgets. They're modernized for the times. They're replete with state-of-the-art bat-themed gadgets and designs that are relied on Batman to fight fictional villains. And the courts in this circuit have been very clear that visually displayed story elements or characters, basically it's a lower standard of protection because a picture speaks a thousand words. And so, once you've gotten to that point of sufficient delineation for the story element, DC owns rights in that element independent of any particular work, which is why our position that the comic book Batmobiles, as opposed to the first embarrassed Batmobiles, were also subject to infringement. So, once you get to that point where the comic book element car is protectable, you then go to the infringement analysis under the Shaw versus Lindheim and other cases. You have to look at access and you have to look at copy. Well, access is admitted. Mr. Tal made replica Batmobiles. He went out to make them. There's no question that he looked at Batmobiles in order to do that. And as to copying, you're supposed to look at the extrinsic test, which is an objective analysis of protectable elements, and the intrinsic, which is a subjective view of the ordinary observer. So, if we look at the replicas, they're both black. They both have scalloped bat fins. They both have a bat-themed front bumper. They have exaggerated front fenders. They have a jet engine afterburner or the appearance of a jet engine afterburner. They have significantly curved windshields. They have bat symbols throughout. And the gadgets, the bat phone, the scope, the bat ray, et cetera. And these are all expressive elements that appear in the comic books. If we were with you this far and got to the intrinsic test, would it have to go back to the jury to evaluate the intrinsic test? No. Can that be determined on summary judgment? It can be determined on summary judgment. What's your best case for that? For a plaintiff on summary judgment, I can give you defendants easily, the Time Warner Funky Films case. The fact of the matter is most summary judgment claims on copyright don't get to the jury because they get settled long before. I don't think I have one off the top of my head. But there's no dispute that these facts are what they are. I mean, that's what sends a case to the jury. It's whether there's facts in dispute. We're not arguing about what happened. We're arguing about what happened means. And Judge Malloy, a case of yours in the Eighth Circuit, the Davis v. Disney case, makes clear that if the question is not what happened but what the interpretation of the facts means as applied to the law, that's a question for the judge, not for the jury. Getting back to the infringement analysis, if we look at the extrinsic test, we've listed elements that appear in the comics and that appear in the replicas. We then go to the intrinsic, whether the ordinary observer would perceive this to be a Batmobile. And we don't think that's a close call. They were marketed as Batmobiles. That's why people wanted them. And the fact that Mr. Tile's customers were told after the fact, oh, I'm not licensed, really doesn't change that. On the trademark issue, the latches question, I do want to raise that very quickly. There's no dispute under the law, the Supreme Court going back as far as 1916, the Hanover Star case holds that if you are a bad actor, if you acted in bad faith, you do not get to rely on any equitable defense. And this case is no different. The Ninth Circuit standard for willful infringement is lower than the cases that Mr. Zerner has cited in his brief. The only issue is adoption of the mark with knowledge. And the National Lead case, going back as far as 1955, holds that. But even if you were to take Mr. Tile's view that you can infringe but tell someone you're doing it, and so therefore it's not willful, we don't think that changes anything. That is no different than the maker of fake Rolexes, selling them for $30, which clearly you understand that buying a $30 fake Rolex, you're not buying the real thing. That doesn't make it any less of an infringement. And the Second Circuit has adopted that in the Hermes v. Lederer de Prairie case, which was adopted in turn by this court in Dan Jack v. Sony. The only other point I wanted to make is, with respect to the comic Batmobiles, this is going back to the issue I was just discussing, we understand that the visuals of the comics do not match up to the replicas made by Mr. Tile. We understand that. But there are plenty of cases that hold that the subsequent infringing use does not have to match up exactly with the character rights. Does that suggest that the easier path for your client is to rely on the reservation of rights in the 1966 TV and 1989 movie productions? It's certainly an easier path, but I don't think it's any less valid. If you look at the Second Circuit's decision in the Salinger case, this was the unauthorized sequel to Catcher in the Rye. The name Holden Caulfield never appeared in the sequel, the unauthorized sequel. It was a character named Mr. C. who exhibited similar traits and similar manner of speech. The Win Done Gone case, this was the Gone with the Wind remake, which was written from the perspective of one of the lesser characters. Even though the characters are portrayed differently, it's still them. So I certainly agree, Your Honor, that the merchandising right, direct copying of the reserved right cars, Batmobiles, is simpler, but I don't think the character road is any less correct under the law. If the Court has no further questions, that's it. I think so. Thank you. Thank you, Mr. Weinberger. Mr. Zerner, I think you have some time remaining. First, with the issue of copyright, the evidence is clear. There is no consistent traits with the Batmobile. It's all over the place. It was a Packard. It was a Corvette. It was a Futura. It's a tank. He says they all have sleek Bat motifs, Bat fins. This is the Batmobile. It has none of the features that he said is consistent on all of them. This has none of those features, except it's black and it's got gadgets on it. So the consistency argument goes to a jury. It's not a question of fact as to whether there are these consistent traits. What about the reservation of rights in the TV and movie production? They had a reservation of rights with ABC. They did not put in the agreement between Fox and ABC, and I would suggest the reason they didn't put that in is because they don't want us to know what's in there, not because they don't have it. The agreement with Fox says that Fox owns the design rights to the car. They owned the right to sell Batmobiles, the right to sell their own Batmobiles. They didn't get the right to sell this Batmobile in that agreement. They never got that right from Fox. So just so I understand what you're saying is that there is nothing in the record that supports a reservation of rights with Fox for the 89 Batmobile. For the 66. Okay. For the 66. All right. For the 89, the work was done by Warner. Anton First is a work for hire for Warner Brothers Production Limited, which there's no contracts between Warner Brothers Production Limited and anybody. So Warner Brothers Inc. had a deal, but they just didn't make the chain, and they have the duty to make the chain. We don't give them the benefit of the doubt. They have to make the chain. I'm sorry. I missed what the weak link was. So Anton First worked for Warner Brothers Production Limited. The copyright to the film is owned by Warner Brothers Inc. There is no document in the record, and they told me they gave me all the documents where Warner Brothers Production Limited gave the rights to the car that Anton First did to Warner Brothers Inc. So they just didn't make that chain of title. There's that break in the link. But you agree there is a contract between V.C. and Warner Brothers Inc.? Yes. Okay. Yes. Right. So they have the right to sell Batmobiles. They never got the right to this Batmobile. But in that case, my client just wants to sell the car as a car. They just go, it's fantastical. It's fantastical. It's a car. They're cars. They were built as cars. The copyright office says if it has any utilitary function, it's a useful item. Not if it does other things as well. As long as it has any utilitarian function, it's considered a useful item. That's in the new compendium of copyright practices, which just came out six weeks ago. They discussed that at 924.1. Are there any other questions? I don't think so. Counsel, thank you, Mr. Zerner. We thank both counsel for the argument. You're obviously both well versed, and we appreciate your preparation. With that, the court has completed the oral argument calendar for the day. We stand in recess until tomorrow.
judges: Melloy, Bybee, Ikuta